

FILED

APR 3 0 2010

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

ENTERED

APR 3 0 2010

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

**NOT FOR PUBLICATION**

1
2
3
4

## UNITED STATES BANKRUPTCY COURT

5

## CENTRAL DISTRICT OF CALIFORNIA

6

## RIVERSIDE DIVISION

7
8
9

In re:

BUD DONALD GRANT and
LINDA FERNANDEZ GRANT,

Debtors.

10

11
12
13
14

In re:

1750 ARENAS LLC,

Debtor.

15
16
17
18
19
20

P.J. ZIMMERMANN,
CHAPTER 7 TRUSTEE,

Plaintiff,

v.

BUD DONALD GRANT, et al.,

Defendants.

21
22
23
24
25
26

KENNETH J. CUMMINS, Administrator
of the Estate of Imelda Fernandez,

Cross-Claimant,

v.

BUD DONALD GRANT, et al.,

Cross-Defendants.

27

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 6:02-bk-29816-PC

(Substantively Consolidated With
 Case No. 6:03-bk-15993-PC)

Chapter 7

Adversary No. 6:09-ap-01230-PC

**MEMORANDUM DECISION RE:
MOTION OF DEFENDANTS,
LEONARD EASTWOOD AND
JULIANN EASTWOOD AND
DEFENDANTS, GEORGE HERLIHY
AND ROBERTA HERLIHY FOR
SUMMARY JUDGMENT OR
PARTIAL ADJUDICATION OF
ISSUES**

Date:  March 30, 2010
Time:  9:30 a.m.
Place:  United States Bankruptcy Court
       Courtroom # 304
       3420 Twelfth Street
       Riverside, CA 92501

1

2  LEONARD EASTWOOD and
   JULIANN EASTWOOD,

3                              Counter Plaintiff,

4  v.

5  P.J. ZIMMERMANN,
   CHAPTER 7 TRUSTEE, et al.,

6                              Counter-Defendants.

7  _____

8  SAN DIEGO FINANCIAL SERVICES,
   INC.,

9                              Counter Plaintiff,

10 v.

11
   P.J. ZIMMERMANN,
12 CHAPTER 7 TRUSTEE, et al.,

13                             Counter Defendants.

   _____

14

15          Before the court is the motion of Defendants, Leonard Eastwood and Juliann Eastwood

16 (the "Eastwoods") and Defendants, George Herlihy and Roberta Herlihy (the "Herlihys") for a

17 summary judgment or alternatively, a partial adjudication of issues ("Motion") in the above

18 referenced adversary proceeding. Defendant and Counter Plaintiff, San Diego Financial

   Services, Inc. ("SDFS") and Defendant, Cross-Claimant, and Counter Defendant, Kenneth J.
19
   Cummins, Administrator of the Probate Estate of Imelda Fernandez ("Cummins") oppose the
20
   Motion. Plaintiff, P.J. Zimmermann, Chapter 7 Trustee ("Zimmermann") has responded, but
21
   does not materially dispute the relief requested in the Motion. At the hearing, Ralph Ascher
22
   appeared for the Eastwoods; Martha A. Warriner appeared for the Herlihys; Howard M. Bidna
23
   appeared for Cummins; Vekeno Kennedy appeared for SDFS; and Wayne E. Johnson appeared
24
   for Zimmermann. The court, having considered the pleadings, evidentiary record, and arguments
25

26

27
                                    - 2 -

1    of counsel, makes the following findings of fact and conclusions of law[1] pursuant to F.R.Civ.P.

2    52(a)(1),[2] as incorporated into FRBP 7052.

3                    I. STATEMENT OF FACTS

4        On December 9, 2002, Bud Donald Grant and Linda Fernandez Grant (the "Grants") filed

5    a voluntary petition under chapter 11 of the Code.  At a status conference on February 4, 2003,

6    the court ordered the United States trustee to appoint a trustee in the case.  Zimmermann's

7    appointment as chapter 11 trustee was approved by order entered on February 10, 2003.  At a

8    hearing on May 27, 2003, the court ordered that the case be converted to a liquidation under

9    chapter 7.  An order converting the case to chapter 7 was entered on June 6, 2003.

10        On June 9, 2003, a document entitled "Notice of Chapter 7 Bankruptcy Case, Meeting of

11    Creditors & Deadlines" ("Notice") was served by the court on creditors and parties in interest

12    setting a deadline of October 15, 2003, within which to file a proof of claim.[3]

13        While serving as trustee in the Grants' chapter 11 case, Zimmermann filed a voluntary

14    chapter 11 petition on behalf of 1750 Arenas, LLC ("Arenas") on April 21, 2003.  On March 16,

15    2004, the court converted Arenas to a case under chapter 7 and ordered that Arenas be

16    consolidated substantively with the Grants' chapter 7 case.  Zimmermann is the duly appointed

17    chapter 7 trustee in the consolidated cases.

18

---

19    [1] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby
adopted as such.  To the extent that any conclusion of law is construed to be a finding of fact, it is
20    hereby adopted as such.

21    [2] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the
22    Bankruptcy Code, 11 U.S.C. §§ 101-1330 prior to its amendment by the Bankruptcy Abuse
Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005).  "Rule"
23    references are to the Federal Rules of Bankruptcy Procedure ("FRBP"), which make applicable
certain Federal Rules of Civil Procedure ("F.R.Civ.P.").
24

25    [3] According to the certificate of service attached to the Notice, the Eastwoods were served with
the Notice containing the deadline to file proofs of claim c/o Kenneth Ruttenberg, Esq., 12100
26    Wilshire Blvd., 15th Floor, Los Angeles, CA 90025.  The Herlihys were served with the Notice at
1816 Heliotrope, Santa Ana, California 92706-3637.
27

1

2      On July 15, 2004, Zimmermann, Cummins, and the Grants executed a Settlement

3   Agreement (a) to resolve certain disputed claims between Zimmermann, Cummins, and the

4   Grants regarding the assets that constituted property of the consolidated bankruptcy estate, and

5   (b) to provide for the orderly liquidation of consolidated estate property and the payment of

6   allowed claims against the estate.[4]  The Settlement Agreement was approved by the court on

7   August 6, 2004.  Paragraphs D, I, and J of the Recitals contained in the Settlement Agreement

8   reflect the intention of the parties executing the agreement:

9          D.     The assets of the Consolidated Bankruptcy Estate[5] include the Property[6] . . . and
                  the Bel-Air Land[7] . . . .  The Debtors earnestly wish to retain 100% of the Property
10                 and the Bel-Air Land and they have attempted to obtain post-petition financing to
                  refinance the Property and the Bel-Air Land to pay creditors and retain the
11                 Property and the Bel-Air Land.  The Trustee has analyzed the claims in the case
                  and concluded that the sum of $2,375,000 is likely sufficient to pay the remaining
12                 Bankruptcy Claims (defined below) in full and to fund a $240,000 litigation
                  reserve.  This estimate by the Trustee represents her best efforts after extensive
13                 efforts analyzing claims and attempting to account for numerous variables.  The
                  actual amount could be higher or lower than $2,375,000.
14
           I.     This Agreement does not contain a guarantee by either the Debtors or the Trustee
15                 that all creditors of the Consolidated Bankruptcy Estate will be paid in full.

16

17   [4] The Eastwoods, the Herlihys, and SDFS were not parties to the Settlement Agreement.

18   [5] "Consolidated Bankruptcy Estate," as used in the Settlement Agreement, "means the
     consolidated bankruptcy estate of Bud and Linda Grant and 1750 Arenas LLC."  Settlement
19   Agreement, 3.

20   [6] "Property," as used in the Settlement Agreement, "means all right, title and interest (if any) of
     the Consolidated Bankruptcy Estate" in the following: (a) the real property and improvements at
21   2 Breeze Avenue, Venice, California (the "Venice Property"); (b) the real property and
     improvements at 335 West Seventeenth Street, Santa Ana, California (the "Santa Ana Property");
22   (c) the real property and improvements at 70-420 Mottle Circle, Rancho Mirage, California (the
     "Mottle Circle Property"); (d) the real property and improvements at 1752 Ridge Road, Palm
23   Springs, California (the "Ridge Road Property"); (e) Silver Screen Entertainment, LLC; and (f)
     The Venice Group, LLC.  Settlement Agreement, 4-6.
24
     [7] The "Bel-Air Land, as used in the Settlement Agreement, is "12.88 acres located in Bel-Air
25   adjacent to or in immediate proximity to the residence located at 1495 Stone Canyon Road, Los
26   Angeles, California."  Settlement Agreement, 3.

27
                                              - 4 -

1    Instead, both the Trustee and the Debtors have made their best good faith effort to estimate such claims. The Agreement contains provisions that should enable the
2    Trustee to recover $2,275,000 which should be sufficient to pay all creditors in full (other than Best, Best & Krieger, Michael Sobel and Robert Nathan). A
3    variety of possible intervening events could result in the distribution to general unsecured creditors dropping below 100% and the Trustee would prefer to have
4    additional funds to cover such a potential shortfall. The Debtors, however, cannot obtain any additional financing and, therefore, the Trustee has agreed to proceed
5    with this Agreement based on her best estimate of the claims in the case. If the actual amount needed to pay all creditors in full exceeds the consideration to be
6    paid the Trustee pursuant to this Agreement, the obligations of the Debtors to pay funds to the Trustee will <u>not</u> increase because (a) the Debtors appear to have no
7    ability to pay any additional funds and (b) this Agreement provides for dismissal of the Consolidated Bankruptcy Cases and, therefore, the Debtors will not obtain
8    discharge of any debts and creditors remain free to pursue the Debtors.

9    J.    On the terms and conditions set forth below, this Agreement (among other things) resolves the claims of the Administrator and the Fernandez Probate Estate to a
10    majority ownership interest in The Venice Group, LLC (and therefore the Venice Property) and Silver Screen Entertainment, LLC (and therefore the Santa Ana
11    Property), all of which claims are disputed by the Trustee and are the subject of litigation pending in the Bankruptcy Court.

12
Settlement Agreement, 1-3 (emphasis added). The Settlement Agreement defines three
13
categories of claims:
14
15    "Allowed Claims" means all proofs of claim in the Consolidated Bankruptcy Cases listed on Exhibit 1 to [the] Agreement.

16    "Bankruptcy Claims" means <u>all allowable claims</u> in the Consolidated Bankruptcy Cases including, but not limited to, all administrative claims, the Allowed Claims and <u>all other</u>
17    <u>allowable claims</u>.

18    "Disallowed Claims" means all proofs of claim in the Consolidated Bankruptcy Cases listed on Exhibit 2 to [the] Agreement.
19
<u>Id.</u> at 3 (emphasis added). At the heart of the dispute between the parties is §§ 2.11, 2.12, and
20
2.13 of the Settlement Agreement, which state, in pertinent part:
21
22    2.11. [T]he Trustee shall set aside $240,000 in a separate interest bearing account to fund future administrative claims (including, but not limited to, administrative claims of the
23    Trustee, the Trustee Professionals and any tax claims). This reserve shall be known as the Claims Reserve. <u>The remaining assets of the Consolidated Bankruptcy Estate shall be</u>
24    <u>used to pay existing claims in accordance with statutory priorities.</u> If the assets available to the Consolidated Bankruptcy Estate (other than the $240,000 in the Claims Reserve)
25    exceed the amounts necessary to pay existing claims (both administrative and nonadministrative) in full (without interest), the excess shall also be deposited into the
26    Claims Reserve. If the assets available to the Consolidated Bankruptcy Estate (other than the $240,000 Claims Reserve) are less than the amounts necessary to pay existing claims
27    (both administrative and nonadministrative), the Trustee shall have the right, but not the

- 5 -

1    obligation (in her sole discretion), to use the Claims Reserve for existing administrative
     claims as well as future administrative claims.

2

3    2.12. All funds held in the Claims Reserve shall remain property of the Consolidated
     Bankruptcy Estate until the Reserve Termination Date[8] even after the Consolidated
     Bankruptcy Cases are dismissed. Notwithstanding dismissal, all funds held by the

4    Trustee in the Claims Reserve shall remain property of the Consolidated Bankruptcy
     Estate and shall remain in custodia legis. The automatic stay shall remain in effect (until

5    the Reserve Termination Date) and shall prohibit any creditor or other party from seizing
     such funds. In addition, the Trustee shall be deemed to have a first priority lien against

6    the funds in the Claims Reserve in an amount equal to the amount of all funds held in the
     Claims Reserve. The lien shall secure payment of all administrative claims of the

7    Consolidated Bankruptcy Estate (including, but not limited to, administrative claims of
     the Trustee, the Trustee Professionals and any tax claims). The lien shall remain in effect

8    until the Reserve Termination Date.

9    2.13. On the Reserve Termination Date, the Debtors and the Trustee will execute the
     Grant Mutual Release and all remaining funds in the Claims Reserve (if any) shall be

10   distributed as follows. First, funds shall be distributed by the Trustee (a) if Michael Sobel
     and Robert Nathan do not timely withdraw their claims, to Best, Best & Krieger, Michael

11   Sobel and Robert Nathan pro-rata to satisfy the unpaid portion of their claims . . . or (b) if
     Michael Sobel and Robert Nathan do timely withdraw their claims, to Best, Best &

12   Krieger only to satisfy the unpaid portion of its claims . . . . Second, to the extent that
     there are at that time further obligations to Oakwood Financial Group secured by the

13   Property, any remaining funds in the Claims Reserve shall be paid to Oakwood Financial
     Group . . . . Third, to the extent that there are no further obligations to Oakwood

14   Financial Group secured by the Property at that time, any remaining funds in the Claims
     Reserve shall be paid to the Administrator to the extent of any unsatisfied obligations of

15   the Debtors under this Agreement. Fourth, any remaining funds in the Claims Reserve
     shall be paid to the Debtors. The Trustee shall have no obligation to release any funds

16   from the Claims Reserve unless and until the Debtors execute the Grant Mutual Release.
     In addition, the Trustee shall have the right to ask the Bankruptcy Court to extend the

17   Reserve Termination Date for good cause. If a dispute arises regarding disbursing any
     surplus in the Claims Reserve and the parties are unable to agree regarding the proper

18   disposition of any surplus in the Claims Reserve, the Trustee may interplead such funds
     with the Bankruptcy Court and recover from such interplead funds all of her attorneys

19   fees and costs for doing so.

20   Settlement Agreement, 10-11 (emphasis added).

21        On May 12, 2005, the court dismissed the consolidated bankruptcy cases of Arenas and

22   the Grants. However, Zimmermann was not discharged as trustee of the consolidated cases upon

23

24

25   [8] "Reserve Termination Date" is defined in the Settlement Agreement as "the later of (a) the date

26   that is four years after the date on which the Court dismisses the Consolidated Bankruptcy Cases
     or (b) such later date set by the Bankruptcy Court." Settlement Agreement, 5.

27

1  dismissal.[9] The automatic stay remained in effect and Zimmermann was authorized to continue

2  to administer the consolidated bankruptcy estate and to pay allowed claims in accordance with

3  the Settlement Agreement until a closing of the case.

4      On August 23, 2007, the Herlihys filed a proof of claim ("Claim # 59") asserting an

5  unsecured nonpriority claim against the estate in the amount of $145,000 for funds allegedly

6  loaned to or for the benefit of Bud Grant. On September 29, 2008, the Eastwoods filed a proof of

7  claim ("Claim # 60-1") asserting an unsecured nonpriority claim of $640,630.52 based upon a

8  state court judgment dated December 15, 2006, for damages for alleged fraud. On March 23,

9  2009, SDFS filed a document entitled "Notice of Assignment of Beneficial Interest in Claims

10  Reserve in Favor of San Diego Financial Services, Inc.," asserting an interest in the Claims

11  Reserve as successor in interest to Tallman & Tallman, Inc., d/b/a Bankers Hill Capital.

12      On May 11, 2009, the Trustee filed her complaint in the above referenced adversary

13  proceeding seeking to interplead the remaining funds held in the Claims Reserve with the

14  bankruptcy court pursuant to § 2.14 of the Settlement Agreement pending a resolution of the

15  conflicting demands of the Eastwoods, the Herlihys, the Grants, SDFS, and Cummins to the

16  funds. On February 19, 2010, the Eastwoods and Herlihys filed the Motion seeking a judgment

17  declaring that their respective tardily-filed claims "are entitled to share pro-rata, pursuant to 11

18  U.S.C. § 726(a)(3) in such funds as may remain in the Claims Reserve following payment of all

19  allowed claims entitled to payment pursuant to 11 U.S.C. § 726(a)(1), (a)(2), or (a)(3), and that

20  

---

21  [9] Paragraph 5 of the Joint Dismissal Order and Reservation of Jurisdiction ("Dismissal Order")

22  entered on May 12, 2005, specifically stated:

23      The dismissal of the Cases shall not discharge the Trustee as chapter 7 trustee nor
   exonerate the Trustee from her bond as trustee. The Trustee shall remain the chapter 7

24      trustee pending further order of the Court. Likewise, dismissal shall not discharge any
   court-approved professional employed by the Trustee. All such professionals shall

25      remain employed pending further order of the Court.

26  

Id. at 3:18-22.

27

1   the claims of all other Defendants and Counter Plaintiffs are not entitled to any distribution."[10]

2   Cummins opposes the Motion, arguing essentially that (a) the Settlement Agreement does not

3   permit the claims of general unsecured creditors to be paid from funds in the Claims Reserve; (b)

4   the Settlement Agreement provides only for payment of the Allowed Claims listed in Exhibit 1;

5   (c) the late-filed claims of the Eastwoods and Herlihys are not entitled to a distribution under the

6   Settlement Agreement because there is no bankruptcy estate and their claims are not listed in

7   Exhibit 1; and (d) the Eastwoods and Herlihys are not prejudiced thereby because the Grants will

8   not receive a discharge in the case. SDFS attacks the merits of the claims held by the Eastwoods

9   and the Herlihys, asserting primarily that neither claim is a prepetition claim nor an allowed

10  claim entitled to a distribution under the Settlement Agreement.

11      After a hearing on March 30, 2010, the matter was continued to May 25, 2010, pending a

12  decision on the motion.

13                              II. DISCUSSION

14      This court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(a) and

15  1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C) and (O).

16  Venue is appropriate in this court. 28 U.S.C. § 1409(a).

17  A. Standard for Summary Judgment

18      Summary judgment is appropriate "if the pleadings, the discovery and disclosure

19  materials on file, and any affidavits show that there is no genuine issue as to any material fact and

20  that the movant is entitled to judgment as a matter of law." F.R.Civ.P. 56(c)(2). "The purpose of

21  summary judgment is to avoid unnecessary trials when there is no dispute as to the [material]

22  facts before the court." Nw. Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1471 (9th

23  Cir. 1994). Under Rule 56(c), the moving party bears the initial burden to establish that there are

24  no genuine issues of material fact to be decided at trial. Celotex Corp. v. Catrett, 477 U.S. 317,

25

26  ───────────────
[19] Motion, 2:24-27.

27

1   322-23 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-50 (1986). "A 'material fact'

2   is one that is relevant to an element of a claim or defense and whose existence might affect the

3   outcome of the suit. The materiality of a fact is thus determined by the substantive law

4   governing the claim or defense." <u>T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626,

5   630 (9th Cir. 1987). Genuine issues of material fact are those "factual issues that make a

6   difference to the potential outcome and 'that properly can be resolved only by a finder of fact

7   because they may reasonably be resolved in favor of either party.'" <u>Svob. v. Bryan (In re Bryan)</u>,

8   261 B.R. 240, 243 (9th Cir. BAP 2001) (quoting <u>Anderson</u>, 477 U.S. at 250). If the movant

9   bears the burden of persuasion, the motion must be supported by evidence establishing the

10   existence of each and every element essential to its case. <u>See Daubert v. Merrell Dow

11   Pharmaceuticals, Inc.</u>, 43 F.3d 1311, 1315 (9th Cir. 1995), <u>cert. denied</u>, 516 U.S. 869 (1995).

12         The burden then shifts to the nonmoving party to produce "significantly probative

13   evidence" of specific facts showing there is a genuine issue of material fact requiring a trial.

14   <u>T.W. Elec. Serv.</u>, 809 F.2d at 630 (citing F.R.Civ.P. 56(e)). The nonmoving party cannot

15   "withstand a motion for summary judgment merely by making allegations; rather, the party

16   opposing the motion must go beyond its pleadings and designate specific facts by use of

17   affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue

18   for trial." <u>In re Ikon Office Solutions, Inc., Sec. Lit.</u>, 277 F.3d 658, 666 (3d Cir. 2002). If the

19   nonmoving party fails to establish a triable issue on an essential element of the movant's case,

20   the moving party is entitled to judgment as a matter of law. <u>See United States v. Shumway</u>, 199

21   F.3d 1093, 1104 (9th Cir. 1999).

22   B. <u>The Proofs of Claim of the Eastwoods and Herlihys are Entitled to Allowance and Treatment

23   as Tardily-Filed Claims</u>

24         A proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a).

25   Absent an objection, a proof of claim constitutes <u>prima facie</u> evidence of the validity and amount

26   of the claim under FRBP 3001(f). <u>Lundell v. Anchor Constr. Specialists, Inc.</u>, 223 F.3d 1035,

27

1  1039 (9th Cir. 2000). The filing of an objection to a proof of claim "creates a dispute which is a

2  contested matter" within the meaning of FRBP 9014 and must be resolved after notice and

3  opportunity for hearing upon a motion for relief. Id.

4       When a creditor has filed a proof of claim that complies with the rules, thereby giving rise

5  to the presumption of validity, the burden shifts to the objecting party who must "present

6  evidence to overcome the prima facie case." United States v. Offord Fin., Inc. (In re Medina),

7  205 B.R. 216, 222 (9th Cir. BAP 1996). To defeat the claim, the objector must come forward

8  with sufficient evidence and "show facts tending to defeat the claim by probative force equal to

9  that of the allegations of the proofs of claim themselves." Lundell, 223 F.3d at 1039 (quoting In

10  re Holm, 931 F.2d 620, 623 (9th Cir. 1991)). "The objector must produce evidence which, if

11  believed, would refute at least one of the allegations that is essential to the claim's legal

12  sufficiency." Lundell, 223 F.3d at 1040 (quoting In re Allegheny Int'l, Inc., 954 F.2d 167, 173-74

13  (3d Cir. 1992)). If the objector produces sufficient evidence to negate one or more of the sworn

14  facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by

15  a preponderance of the evidence. Ashford v. Consol. Pioneer Mort. (In re Consol. Pioneer

16  Mort.), 178 B.R. 222, 226 (9th Cir. BAP 1995), aff'd, 91 F.3d 151 (9th Cir. 1996) (quoting

17  Allegheny Int'l, 954 F.2d at 173-74). The ultimate burden of persuasion remains at all times on

18  the claimant. Lundell, 223 F.3d at 1039; Holm, 931 F.2d at 623.

19       1. The Eastwood Claim

20       The Eastwoods filed their initial proof of claim (Claim # 60-1) in the amount of

21  $640,630.52 on September 29, 2008, and an amended proof of claim (Claim # 61-1) in the

22  amount of $640,630.52 on October 7, 2008. These claims were superceded by another amended

23  claim (Claim # 61-2) filed by the Eastwoods on November 10, 2009, in the amount of

24  $763,427.24, consisting of $282,965.60 in actual damages and $480,461.64 in punitive damages.

25  There is no dispute that each of the Eastwoods' proofs of claim are untimely as having been filed

26  after the deadline of October 15, 2003. However, an allowed unsecured claim filed after the

27

1    deadline to file proofs of claim by a creditor who had notice or actual knowledge of the

2    bankruptcy in time to timely file a proof of claim is entitled to a distribution under § 726(a)(3).

3    11 U.S.C. § 726(a)(3).  To the extent the tardily-filed proof of claim includes a claim for punitive

4    damages, an allowed unsecured claim for punitive damages is entitled to distribution under §

5    726(a)(4).  11 U.S.C. § 726(a)(4).

6          SDFS asserts that the Eastwoods' claim is not a pre-petition claim, pointing to the fact

7    that the judgment underlying the claim was obtained on December 15, 2006 – nearly four years

8    after the petition date.  However, the relevant date for determining whether the Eastwoods have a

9    pre-petition claim against the estate is the date on which their claim arose, not the date of the

10   judgment.  Section 101(5) defines the term "claim" to mean a "right to payment, whether or not

11   such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured,

12   unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ."  11 U.S.C. §

13   101(5).  The Supreme Court has stated that the term "'right to payment' [means] nothing more

14   nor less than an enforceable obligation . . . ."  Pennsylvania Dept. of Public Welfare v.

15   Davenport, 495 U.S. 552, 559 (1985).  Congress intended to adopt the broadest available

16   definition of "claim" in the context of bankruptcy proceedings.  Johnson v. Home State Bank,

17   501 U.S. 78, 83–84 (1991).

18         The Eastwoods filed their Cross-Complaint for Fraud and Negligent Misrepresentation in

19   Case No. INC 022351, styled B. Donald Grant, et ux. v. Leonard D. Eastwood, et al., in the

20   Superior Court of California, County of Riverside, on December 3, 2001.  Eastwoods' claim was

21   contingent and unliquidated on the petition date, but was fixed and liquidated upon entry of the

22   state court judgment on December 15, 2006.  Eastwoods' proof of claim is properly documented

23   and constitutes prima facie evidence of the validity and amount of their claim.  See FRBP

24   3001(f) ("A proof of claim executed and filed in accordance with these rules shall constitute

25   prima facie evidence of the validity and amount of the claim.").

26         To contest the validity of Eastwoods' claim, SDFS had the burden in response to the

27

- 11 -

1    Motion to produce "significantly probative evidence" of specific facts showing a genuine issue of

2    material fact as to one or more of the elements of the Eastwoods' claim. SDFS has not produced

3    evidence to overcome the presumption of validity that must be accorded the claim under FRBP

4    3001(f).[11]

5        2. The Herlihy Claim

6        The Herlihys filed their proof of claim (Claim # 59) in the amount of $145,000 on August

7    23, 2007.[12] There is no dispute that the claim was filed after the deadline of October 15, 2003,

8    and is untimely. SDFS objects on the grounds that the Herlihys have not provided sufficient

9    evidence of the validity of the claim. Herlihys' proof of claim is supported by (a) promissory

10   note in the amount of $65,000; (b) a copy of a cashier's check in the amount of $50,000; and (c)

11   the declarations of George B. Herlihy and Bud Grant which state that George B. Herlihy made

12   loan advances to Bud Grant totaling $145,000 and that such amounts remained unpaid on the

13   petition date. SDFS questions the validity of the note, claiming that the lack of a maturity date

14   on the note is indicative of a gift or illegal transaction. SDFS further asserts that the copy of the

15   _____

16   [11] In their Motion, the Eastwoods argue that they have an allowed claim as a matter of law based
     on the state court judgment and that the bankruptcy court lacks subject matter jurisdiction over

17   any challenge to the claim, citing the Rooker-Feldman doctrine. Motion, 9:8-12. By reference
     from the district court, the bankruptcy court has subject matter jurisdiction of "any or all cases

18   under title 11 and any or all proceedings arising under title 11 or arising in or related to a case

19   under title 11." 28 U.S.C. § 157(a). The allowance or disallowance of claims against a
     bankruptcy estate is the heart of the court's subject matter jurisdiction. See 28 U.S.C. §

20   157(b)(2)(B). "Rooker-Feldman . . . is a narrow doctrine, confined to 'cases brought by state
     court losers complaining of injuries caused by state-court judgments rendered before the district

21   court proceedings commenced and inviting district court review and rejection of those
     judgments.'" Lance v. Dennis, 546 U.S. 459, 464 (2006) (quoting Exxon Mobil Corp. v. Saudi

22   Basic Indus. Corp., 544 U.S. 280, 284 (2005)). Rooker-Feldman "does not override or supplant

23   issue and claim preclusion doctrines." Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez),
     367 B.R. 99, 104 (9th Cir. BAP 2007). The Ninth Circuit Bankruptcy Appellate Panel has

24   previously held that it is "error for the bankruptcy court to conclude that the Rooker-Feldman

25   doctrine require[s] it to give [a] state court judgment preclusive effect in [a] dischargeability
     action." Id. Rooker-Feldman has no application to the issues raised in this case.

26
     [12] The court takes judicial notice of Claim # 59 filed on August 23, 2007.
27

- 12 -

1    cashier's check receipt attached to the proof of claim is illegible, and that the declarations should

2    be given no weight because they are (a) three years old; (b) executed on the same day; (c) contain

3    no information regarding the exact dates of the loans or advances (although approximate dates

4    are provided); and (d) are not declarations in support of the pending Motion.

5          To contest the validity of Herlihys' claim, SDFS had the burden in response to the

6    Motion to produce "significantly probative evidence" of specific facts showing a genuine issue of

7    material fact as to one or more of the elements of the Herlihys' claim. The court finds that the

8    documents attached to Herlihys' proof of claim are sufficient to give rise to the evidentiary effect

9    accorded by FRBP 3001(f) as a matter of law. At best, SDFS's argument might go to the weight

10   the court should give such evidence. However, SDFS has not carried its burden to produce

11   credible evidence to negate one or more of the sworn facts in the proof of claim.[13] Accordingly,

12   the Herlihys' claim is allowed as an unsecured nonpriority claim in the amount of $145,000

13   entitled to distribution as a tardily-filed claim pursuant to § 726(a)(3).

14   C. The SDFS' Claim is a Post-Petition Claim That is Not Entitled to a Distribution From the

15   Consolidated Bankruptcy Estate

16         In its response, SDFS admits that its claim "arises from a loan made to the Debtors on

17   'July 19, 2005.'"[14] The documents attached to the Declaration of Donald R. Rady in support of

18   SDFS's response establish that the genesis of SDFS's claim is a Home Equity Line of Credit

19

20   [13] SDFS seeks leave to conduct discovery regarding the veracity of the documents supporting the
     Herlihys' proof of claim. SDFS's request is denied. The Eastwoods and Herlihys correctly note
21   that "[o]n November 16, 2009, the Court entered a Scheduling Order in this proceeding
     establishing that the first phase of discovery would be limited to the issue of the validity and
22   amount of the Herlihy and Eastwood claims, and setting a discovery cutoff date of February 5,
     2010, as to that issue. SDFS thus had ample opportunity to conduct the discovery it now seeks
23   and, having failed to conduct any discovery, is now precluded from any further discovery on this
     issue." Reply to Opposition of San Diego Financial Services, Inc. & Kenneth Cummins,
24   Administrator, to Motion for Summary Judgment or Partial Adjudication of Issues, 7:22-28.

25   [14] San Diego Financial Services, Inc.'s Memorandum of Points and Authorities in Support of
     Opposition to Defendants' Eastwood and Herlihys' Motion for Summary Judgment or Partial
26   Adjudication of Issues, 9:26.

27
                                         - 13 -

1   Agreement with Bankers Hill Capital, Inc. dated July 19, 2005, secured by a Deed of Trust on the

2   real property and improvements at 1495 Stone Canyon Road, Los Angeles, California.  SDFS

3   received the note and deed of trust from Tallman & Tallman by Assignment of Deed of Trust

4   dated November 1, 2005.  SDFS has not alleged that its claim is entitled to treatment as an

5   administrative expense claim against the consolidated bankruptcy estate nor is there any evidence

6   in the record to support the treatment of SDFS's claim as an administrative expense.  Therefore,

7   the court finds that there is no genuine issue of material fact as to the claims of SDFS and its

8   predecessors in interest, Tallman & Tallman and Bankers Hill Capital, Inc.  The claims of SDFS

9   and its predecessors in interest, Tallman & Tallman and Bankers Hill Capital, Inc., are not claims

10  allowable under § 502 nor does SDFS, or its predecessors in interest, Tallman & Tallman and

11  Bankers Hill Capital, Inc., have any other right to the remaining funds held by Zimmermann in

12  the Claims Reserve.

13  D.  Cummins is not Entitled to a Distribution from the Claims Reserve

14       Cummins does not attack the merits of either the Eastwood claim or the Herlihy claim,

15  but asserts that neither claim is entitled to a distribution under the terms of the Settlement

16  Agreement.  Cummins' reads §§ 2.06 through 2.13 of the Settlement Agreement to reach the

17  following result:  The Settlement Agreement established a fund for the payment of Allowed

18  Claims and dismissal of the consolidated bankruptcy cases without a discharge to the Grants.

19  Dismissal terminated the consolidated bankruptcy estate of the Grants and Arenas, except for the

20  Claims Reserve established by the Settlement Agreement.  The funds in the Claims Reserve,

21  however, are earmarked by the terms of the Settlement Agreement for specific creditors or parties

22  in interest.  The Eastwood claim and the Herlihy claim were filed after dismissal of the

23  consolidated cases.  Neither claim is entitled to a distribution under the Settlement Agreement

24  because they were not listed as an Allowed Claim in Exhibit 1 to the Settlement Agreement nor

25  earmarked to receive a distribution under the Claims Reserve.  Neither the Eastwoods or the

26  Herlihys are prejudiced by this result, according to Cummins, because they may still enforce their

27

- 14 -

1   claims against the Grants since the Grants did not receive a discharge in the consolidated

2   bankruptcy cases.  Cummins' construction of the Settlement Agreement is flawed for several

3   reasons.

4   First, dismissal of the consolidated bankruptcy case did not terminate the consolidated

5   bankruptcy estate of the Grants and Arenas.  Unless the court orders otherwise, dismissal

6   generally ends the automatic stay, revests property of the estate in the entity in which such

7   property was vested immediately prior to the commencement of the case, and restores the debtor,

8   creditors, and parties in interest to the position they occupied prior to the petition date.  See 11

9   U.S.C. § 349(b).  In this case, the court ordered otherwise.  The Dismissal Order specifically

10  stated that dismissal would not "(A) reinstate any proceeding or custodianship superceded under

11  11 U.S.C. § 543, (B) reinstate any transfer avoided under 11 U.S.C. §§ 522, 544, 545, 547, 548,

12  549, or 724(a), or preserved under 11 U.S.C. §§ 510(c)(2), 522(i)(2), or 551, (C) reinstate any

13  lien avoided under 11 U.S.C. § 506(d), (D) vacate any order, judgment, or transfer ordered under

14  11 U.S.C. §§ 522(i)(1), 542, 550, or 553 or (E) revest the property of the estate in the entity in

15  which such property was vested immediately before the commencement of the case . . . ."[15]  The

16  Dismissal Order specifically provided for continuation of the automatic stay with respect to

17  property of the consolidated bankruptcy estate, including all remaining funds in the consolidated

18  bankruptcy cases in the possession, custody, and control of Zimmermann.[16]  Finally, the

19  Dismissal Order retained the jurisdiction of this court over the consolidated bankruptcy cases,

20  including any dispute arising under the Settlement Agreement or Dismissal Order.[17]

21  Furthermore, Cummins' contention is belied by the terms of the Settlement Agreement itself

22  which acknowledge that funds held by Zimmermann are property of the consolidated bankruptcy

23

24  _____

    [15] Dismissal Order, 2:24-3:5.

25  [16] Id., 4:4-12.

26
    [17] Id., 6:10-27.

27
                                                    - 15 -

1    estate, including the funds in the Claims Reserve. Section 2.12 states specifically that:

2    > All funds held in the Claims Reserve shall remain property of the Consolidated
     > Bankruptcy Estate until the Reserve Termination Date even after the Consolidated
3    > Bankruptcy Cases are dismissed. Notwithstanding dismissal, all funds held by the
     > Trustee in the Claims Reserve shall remain property of the Consolidated Bankruptcy
4    > Estate and shall remain in custodia legis. The automatic stay shall remain in effect (until
     > the Reserve Termination Date) and shall prohibit any creditor or other party from seizing
5    > such funds.

6    Settlement Agreement, 10. The Claims Reserve is property of the consolidated bankruptcy

7    estate.

8          Second, Cummins' assertion that the Settlement Agreement was intended only to fund the

9    payment of Allowed Claims (or then existing Allowed Claims) ignores the recital in paragraph D

10   and gives no effect to the definition of "Bankruptcy Claims" in the agreement. Paragraph D

11   states, in pertinent part:

12   > The Trustee has analyzed the claims in the case and concluded that the sum of $2,375,000
     > is likely sufficient to pay the remaining <u>Bankruptcy Claims</u> (defined below) in full and to
13   > fund a $240,000 litigation reserve. This estimate by the Trustee represents her best
     > efforts after extensive efforts analyzing claims and attempting to account for numerous
14   > variables. The actual amount could be higher or lower than $2,375,000.

15   Settlement Agreement, 1 (emphasis added). "'Bankruptcy Claims' means <u>all allowable claims</u> in

16   the Consolidated Bankruptcy Cases including, but not limited to, all administrative claims, the

17   Allowed Claims and <u>all other allowable claims</u>." <u>Id.</u>, 3 (emphasis added). After setting aside

18   $240,000 for the Claims Reserve, § 2.11 required Zimmermann to use "[t]he remaining assets of

19   the Consolidated Bankruptcy Estate . . . to pay existing claims in accordance with statutory

20   priorities." <u>Id.</u>, 10.

21         The various sections of the Settlement Agreement cannot be read in isolation. The court

22   must construe the four corners of the Settlement Agreement and give effect to each word, clause,

23   and section contained in the agreement to effectuate its intent and purpose. The foregoing

24   provisions, taken together, support a finding that the Settlement Agreement was not intended

25   only to fund the payment of Allowed Claims, but to fund a distribution on account of

26   administrative claims, Allowed Claims and all other allowable claims, <u>i.e.</u>, any claim that existed

27

- 16 -

1    on the petition date and was allowable as a claim against the estate and entitled to distribution in

2    accordance with § 726.

3        It is undisputed that all timely-filed allowed unsecured claims against the consolidated

4    bankruptcy estate have been paid, and that the only remaining claims allowable under § 502 are

5    the tardily-filed claims of the Eastwoods and the Herlihys.[18] Cummins asserts that his "rights and

6    priority to receive funds from the Claims Reserve is as much a matter of contract right than

7    Bankruptcy Law . . . ."[19] Cummins reasons that the Estate of Imelda Fernandez, Deceased, gave

8    up valuable rights in consideration for "(1) the commitment of the Grants to pay [Cummins]

9    $3,500 per month during the entire course of the administration of the Ridge Road Property by

10   the Fernandez Probate Estate . . . and (2) the right to have such amounts paid from funds in the

11   Claims Reserve, in the event the Grants failed to honor their obligations to pay the $3,500 per

12   month . . . ."[20]

13       The Settlement Agreement resolved the disputed and conflicting claims of Zimmermann,

14   Cummins, and the Grants to assets that constituted property of the consolidated bankruptcy

15   estate. Pursuant to the material terms of the Settlement Agreement, the Grants paid Cummins the

16   sum of $400,000 and Zimmermann and the Grants transferred to Cummins all right, title, and

17   interest in the Ridge Road Property. In consideration therefor, Cummins waived all claims as to

---

[18] According to the evidence, Michael Sobel, Strategic Litigation Services, and Robert Nathan
are not entitled to a distribution from the Claims Reserve. Their claims were disallowed
pursuant to a stipulated order entered on January 4, 2005. Best, Best & Krieger is not entitled to
a distribution from the Claims Reserve. Best, Best & Krieger has received payment and provided
an executed release of claims to Zimmermann. Nor are Oakwood Financial Group and Barry
Levine entitled to a distribution from the Claims Reserve, having provided an executed release of
all claims to Zimmermann. Supplemental Response of the Chapter 7 Trustee to the Joint Motion
for Summary Judgment or Partial Adjudication of Issues Filed by Leonard and Juliann Eastwood
and George and Roberta Herlihy, 4:10-22.

[19] The "Administrator's" Reply to Response and Opposition to Motion for Summary Judgment
or Partial Adjudication of Issues, 3:11-12.

[20] Id. 3:23 - 4:1.

- 17 -

1    all property in dispute other than the Ridge Road Property and transferred all right, title, and

2    interest, if any, of the Estate of Imelda Fernandez, Deceased, to the Grants.  The agreement

3    contained additional provisions between Cummins and the Grants, including the Grants'

4    obligation to pay $3,500 per month to Cummins toward the mortgage on the Ridge Road

5    Property and Cummins' right to seek reimbursement from the Claims Reserve for any amounts

6    not paid by the Grants before any surplus funds under the Claims Reserve were paid to the

7    Grants.

8        Cummins' right to a distribution from the Claims Reserve is not founded upon a pre-

9    petition claim against the consolidated bankruptcy estate allowable under § 502.  It is essentially

10   a post-petition claim arising under the Settlement Agreement against surplus funds that would

11   otherwise be payable to the Grants under the Settlement Agreement and § 726(a)(6).  Given the

12   intent and purpose of the Claims Reserve, the court holds that the language of the Claims

13   Reserve, when construed together with other provisions of the Settlement Agreement and the

14   distribution scheme of § 726(a), does not trump the statutory directives of § 726(a)(3) and (4) nor

15   prohibit a distribution to the Eastwoods and Herlihys, who were not parties to the Settlement

16   Agreement, on account of their allowed tardily-filed unsecured nonpriority claims.

17                                    CONCLUSION

18       For the reasons stated, the court finds there is no genuine issue of material fact with

19   respect to the relief requested in the Motion and that the Eastwoods and Herlihys are entitled to a

20   summary judgment on their claims as a matter of law.  The Motion will be granted and a

21   judgment will be entered (a) allowing the Eastwoods' Claim # 61-2 as (1) an unsecured

22   nonpriority claim in the amount of $282,965.60 entitled to distribution as a tardily-filed claim

23   under § 726(a)(3); and (2) an unsecured nonpriority claim for $480,461.64 entitled to distribution

24   under § 726(a)(4); (b) disallowing the Eastwoods' Claims # 60 and #60-1; and (c) allowing the

25   Herlihys' Claim # 59 as an unsecured nonpriority claim in the amount of $145,000 entitled to

26   distribution as a tardily-filed claim under § 726(a)(3).  The judgment will provide that neither

27

- 18 -

1  Cummins, SDFS, Tallman & Tallman, Inc., Bankers Hill Capital, Inc., or the Grants hold any

2  claim allowable under § 502 nor any other right to the remaining funds held by Zimmermann in

3  the Claims Reserve.  Nothing in the judgment will preclude the court from entering a further

4  order allowing any remaining administrative claims in the case or authorizing payment of such

5  claims prior to payment by Zimmermann of the allowed claims of the Eastwoods and the

6  Herlihys.

7        The Eastwoods and Herlihys shall submit a proposed judgment consistent with this

8  memorandum

9  DATED: April 30, 2010

10                                              _____
                                                PETER H. CARROLL
                                                United States Bankruptcy Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

| In re: | | |
|--------|--|--|
| | | CHAPTER: |
| | Debtor(s). | CASE NUMBER: |

### NOTE TO USERS OF THIS FORM:

**1)** Attach this form to the last page of a proposed Order or Judgment.  Do not file as a separate document.
**2)** The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3) Category I.** below:  The United States trustee and case trustee (if any) will always be in this category.
**4) Category II.** below:  List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*)    MEMORANDUM DECISION RE: MOTION OF DEFENDANTS, LEONARD EASTWOOD AND JULIANN EASTWOOD AND DEFENDANTS, GEORGE HERLIHY AND ROBERTA HERLIHY FOR SUMMARY JUDGMENT OR PARTIAL ADJUDICATION OF ISSUES was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of    4/30/2010                                     , the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

- Ralph Ascher    ralphascher@aol.com

- Wayne E Johnson    wayne@waynejohnsonlaw.com

- United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov

- Richard J Vattuone    rjvattuone@valuetsales.com,
  mkirkos@valuetsales.com;vkennedy@valuetsales.com

- Martha A Warriner    mwarriner@rhlaw.com

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

☒ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐ Service information continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                   **F 9021-1.1**

| In re: | |
|---|---|
| | CHAPTER: |
| Debtor(s). | CASE NUMBER: |

**ADDITIONAL SERVICE INFORMATION** (if needed):


Howard M. Bidna, Esq.
BIDNA & KEYS, APLC
5120 Campus Dr.
Newport Beach, CA 92677

Vekeno Kennedy, Esq.
3770 Hancock Street, Suite D
San Diego, CA  92110-4327

Bud Grant
310 Fernando Street, #100
Newport Beach, CA 92661

Linda Fernandez Grant
310 Fernando Street, #100
Newport Beach, CA 92661

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                          **F 9021-1.1**